UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SMICIA DADA JEANNITON,                          :
                                                :
                                    Plaintiff,  :
                                                :                 **OPINION AND ORDER**
              -against-                         :                 **15-CV-5145 (DLI)**
                                                :
NANCY A. BERRYHILL,[1]                          :
Acting Commissioner of Social Security,         :
                                                :
                                   Defendant.   :
-------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

On July 12, 2012, Plaintiff Smicia Dada Jeanniton ("Plaintiff") filed an application for social security disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging disability beginning June 26, 2012. *See* Certified Administrative Record ("R."), Dkt. Entry No. 9, at 23, 160-66. Plaintiff's application was denied, *Id.* at 74-79, and she timely requested a hearing. *Id.* at 80-81. On May 8, 2014, Plaintiff testified at a hearing before Administrative Law Judge Kieran McCormack (the "ALJ"). *Id.* at 38-72. On May 29, 2014, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Act. *Id.* at 20-37. On July 13, 2015, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *Id.* at 1-5.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g). *See* Complaint ("Compl."), Dkt. Entry No. 1. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Plaintiff moved for judgment on the pleadings seeking reversal of the Commissioner's decision or, alternatively, remand for further administrative proceedings. *See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Therefore, the Court has substituted her as the named Defendant pursuant to Federal Rule of Civil Procedure 25(d).

Entry No. 22.  The Commissioner cross-moved for judgment on the pleadings seeking affirmance of the denial of benefits.  *See* Mem. of Law in Supp. of Def.'s Cross-Mot. for J. on the Pleadings and in Opp. to Pl.'s Mot. For J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 24.  For the reasons set forth below, the Commissioner's cross-motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted, and the instant action is remanded for further administrative proceedings.

## BACKGROUND[2]

### A.    Non-Medical and Self-Reported Evidence

Plaintiff was born in 1966.[3]  R. at 160.  She was 45 years old at the time she allegedly became disabled.  *Id*. at 31.  She is a high school graduate.  *Id*. at 193.  From 1992 to 2012, Plaintiff worked full time as a home health aide or nurse assistant at a nursing home.  *Id*. at 45-48, 193. Plaintiff slipped at work in February 2011 and injured her left shoulder, arm, neck, back, and left knee.  *Id*. at 46-47.  She underwent knee surgery on May 25, 2011 and received physical therapy and treatment for a few months thereafter.  *Id.* at 52, 265, 280-81.  She returned to work in November 2011, but was unable to work on and after June 26, 2012.  *Id*. at 46, 52, 192.  Plaintiff subsequently received a lump sum workers' compensation settlement and was entitled to receive ongoing medical treatment.  *Id*. at 54-55.

In a disability report dated July 13, 2012, Plaintiff stated that she was five feet and two inches in height and weighed 173 pounds.  *Id*. at 192.  In a function report dated July 26, 2012, *Id*. at 211-18, she reported that she did not need help to care for her personal needs or take medication.

---

[2] Having thoroughly and carefully reviewed the administrative record, the Court finds the Commissioner's factual background accurately represents the relevant portions of said record.  Accordingly, the following background is taken substantially from the background section of the Commissioner's brief, except as otherwise indicated.

[3] Plaintiff was 45 years old on the alleged disability onset date, June 26, 2012.  As such, Plaintiff was a "younger person" as defined in 20 C.F.R. § 404.1563(c).

*Id*. at 213.  She fixed meals twice per week.  *Id*.  Plaintiff stated that she did not need help doing household chores.  *Id*. at 214.  She was able to go out alone, and walked or drove a car.  *Id*.  She shopped twice a month for food with the help of her son.  *Id*. at 215.  She went to church every Saturday.  *Id*. at 215-16.  She reported that her ability to lift, stand, walk, climb stairs, and kneel were affected by her impairments.  *Id*. at 216.  She did not report having problems with sitting, squatting, reaching, or using her hands.  *Id*. at 216-17.  She said she was right-handed and used a cane when walking.  *Id*. at 217.  In an appeal disability report submitted in September 2012, *Id*. at 205-10, Plaintiff reported that she was unable to stand up for "long periods of time" and was unable to clean her house.  *Id*. at 208. She said she was in "a lot more pain," sat and lied down more, and did less than she previously reported.  *Id*.

On May 8, 2014, Plaintiff testified at an administrative hearing before the ALJ.  *Id*. at 38-72.  She testified that, in addition to her work accident in February 2011, she injured her left knee in a car accident in May 2010, for which she underwent her arthroscopic knee surgery in May 2011 and had physical therapy until July 2012.  *Id*. at 52-54.  She thus had two surgeries on the same knee.  *Id.* at 277.  Plaintiff testified that her knee still hurt and, sometimes, she could not stand on it for a long time.  *Id*. at 56.  She refused additional knee replacement surgery because she already had "[t]oo much surgery" and used a cane.  *Id*. at 56-57, 64.  When her back was "killing [her] so much," she used the cane in the house.  *Id*. at 61.  Plaintiff testified that she had lower back pain and could not "sit too long."  *Id*. at 57.  Plaintiff said her neck and left shoulder hurt when she carried things.  *Id*.  She had a big bump on her left shoulder and could not lift "too good."  *Id*.  Sometimes, she could not move her neck.  *Id*. at 64.  She did not want the recommended surgery on her neck and left shoulder because it was "too much," and she was afraid of surgery  *Id*. at 57,

64. For pain, she was prescribed Ibuprofen and Tylenol. *Id*. at 58. She also took medication for high blood pressure and diabetes, which did not cause side effects. *Id*. at 59.

Plaintiff testified that she could sit for ten minutes before needing to stand up due to back, neck, and foot pain, and could stand for eight to ten minutes before needing to sit back down. *Id*. at 63-64. She could lift four pounds, and felt pain in her back and neck when lifting things. *Id*. at 64. Plaintiff stated that she could not walk far, only less than two blocks. *Id*. She was able to bathe and dress herself and sometimes cooked meals. *Id*. at 61. She stated that she went to the grocery store and laundromat with her son's help and usually cooked for her son in the morning. *Id*. at 61-62. Her son did household chores, such as mopping the floor. *Id*. at 60. She testified that she had a driver's license, but had not driven since 2011 and used public transportation instead. *Id*. at 62. She went to church every Saturday. *Id*. at 63.

Christina Boardman, a vocational expert ("VE"), testified at the hearing. *Id*. at 66-70; *see* 151-53. She stated that Plaintiff's past relevant work as a nurse assistant was considered "medium work." *Id*. at 66. The ALJ asked about a hypothetical individual with Plaintiff's age, education, and work experience, who could occasionally climb ramps and stairs, balance, and otherwise perform sedentary work, but who could not climb ladders, ropes or scaffolds; squat; kneel; crouch; or crawl. *Id.* at 68. The ALJ asked whether such an individual could perform Plaintiff's past relevant work. *Id*. The VE responded that such an individual could not do Plaintiff's past relevant work as a nurse assistant, but would be able to perform the following sedentary jobs: charge account clerk, order clerk, and table worker. *Id*. at 67-68.

**B.    Relevant Medical Evidence**

**1.   Medical Evidence Prior to June 26, 2012**

On July 9, 2010, Plaintiff underwent a left knee arthroscopy for injuries sustained in a

motor vehicle accident that occurred on May 29, 2010.  *Id*. at 274.  In December 2010, Plaintiff

went to Wyckoff Heights Medical Center ("Wyckoff") with complaints of right leg and foot pain.

*Id*. at 230-58.

Plaintiff had worked as a nurse assistant for nearly 20 years before February 2, 2011, when

she slipped and fell at work.  *Id.* at 259.  She was taken to the Wyckoff emergency room, where

she was diagnosed with a head injury and elbow contusion.  *Id.* at 223-24.  X-rays showed a normal

lumbosacral spine.  *Id*. at 227.  A CT-scan of her head was normal.  *Id*. at 228.  A cervical spine

CT-scan showed mild degenerative changes.  *Id*. at 229.  Plaintiff was advised to see her primary

care physician and resume activity as tolerated.  *Id*. at 223.

In a report dated February 24, 2011, Henry Htay Myint, M.D., diagnosed Plaintiff with

cervical and lumbar radicular pain and left shoulder muscle spasm. *Id*. at 284.  Dr. Myint

recommended physical and chiropractic therapy, knee supports, and magnetic resonance imaging

("MRI") of the shoulder and prescribed Ibuprofen.  *Id*.  He noted that Plaintiff was partially

disabled and could not return to work until March 30, 2011.  *Id*.

A left shoulder MRI performed on March 28, 2011 showed supraspinatus tendinosis,

acromioclavicular joint productive change and type II acromion, long head of the biceps fluid, and

glenohumeral fluid in the axillary recess with extension into the subscapularis bursa.  *Id*. at 260-

61.

Orthopedic surgeon Menachem Epstein, M.D., examined Plaintiff on March 31, 2011, in

connection with her workers' compensation claim.  *Id*. at 273-78.  Dr. Epstein diagnosed status

post left knee arthroscopy, swelling, adhesive capsulitis, cervical spine soft tissue sprain, lumbar

spine mild soft tissue sprain, and left shoulder soft tissue sprain.  *Id*. at 277.  He stated that her

degree of disability was "moderate partial" and that her current injuries were "superimposed" on

her prior injuries from the motor vehicle accident in May 2010.  *Id*. at 278.

On April 15, 2011, Plaintiff saw orthopedic surgeon Andrew Turtel, M.D.  Dr. Turtel diagnosed "possible recurrent medial meniscus tear/early osteoarthritis" and recommended left knee replacement surgery; arthroscopy was presented as an interim measure.  *Id*. at 282-83.  Dr. Turtel performed an arthroscopy on Plaintiff's left knee on May 25, 2011.  *Id*. at 280-81.  In a post-operative report dated June 3, 2011, Dr. Turtel reported that Plaintiff had good range of motion and minimal discomfort and gave her a prescription for physical therapy.  *Id*. at 279.  She used a cane but was to use it less over time.  *Id*.

An MRI of Plaintiff's neck soft tissue conducted on July 18, 2011 showed scoliosis versus the positional curve, prominence of a few left submandibular/submental lymph nodes, no evidence of solid mass or lymph node enlargement in area of clinical concern, and a mucus retention cyst. *Id.* at 263-64.

Orthopedic surgeon Stephen Zolan, M.D., performed an orthopedic consultation in connection with Plaintiff's workers' compensation claim on July 21, 2011.  *Id*. at 269-72.  Dr. Zolan noted that Plaintiff presented a moderate partial disability.  *Id.* at 271.  Dr. Zolan reevaluated Plaintiff on December 1, 2011.  *Id*. at 265-68.  He indicated that she had stopped treatment and physical therapy for her knee and had returned to regular work as a nurse assistant on November 1, 2011.  *Id*. at 265.  Plaintiff complained of "left knee pain predominantly status post-surgery" and occasional back, neck, and left shoulder discomfort.  *Id*. at 266.  Dr. Zolan stated that Plaintiff had reached maximal medical improvement and did not require further orthopedic or physiotherapy treatment or surgical intervention.  *Id*. at 267.  She exhibited no orthopedic disability.  *Id*.

Plaintiff stopped working on June 26, 2016 due to her condition.  *Id.* at 192.

**2.   Medical Evidence On or After June 26, 2012**

Plaintiff began treatment with family practitioner Jacqueline Storey, M.D., *Id*. at 299, on July 5, 2012.  *Id*. at 294-98, 315-19.  Plaintiff complained of having difficulty sitting, standing, kneeling, and walking up or down stairs.  *Id*. at 294.  She walked with a cane for support and balance due to left knee pain.  *Id*. at 296.  Plaintiff said she experienced intermittent pain in the cervical spine (sharp, shooting, improved, and radiating to the left shoulder), thoracic spine (improved), and lumbar spine (shooting, dull ache, radiating to the left leg).  *Id*. at 295-96.  On examination, straight leg raising was positive at 40 degrees on the left.  *Id*. at 296.  Sensation was normal in her neck.  *Id.*  There was paresthesia in the left leg.  *Id.*  Plaintiff said she could not stand more than one-half hour or sit for more than one hour. *Id*. There was tenderness in the upper trapizious/paraspinal muscles, cervical spine range of motion, and normal sensation.  *Id*. at 295. There was tenderness of the paraspinal muscles and decreased range of motion of the lumbar spine. *Id*. at 296.  Plaintiff complained of left knee and left shoulder pain, and examination showed tenderness, but no swelling.  *Id.*  Dr. Storey diagnosed cervical, thoracic, and lumbar strain, but ruled out radiculopathy, left shoulder injury, and status post left knee arthroscopy for meniscal tear.  *Id*. at 297.  She prescribed continuation of physical therapy and Tramadol for pain.  *Id.*; *see Id. at* 293, 314.  Dr. Storey opined that Plaintiff had a mild disability, *Id.* at 298, and would be able to return to work on August 10, 2012.   *Id*. at 299, 319, 320.

On July 10, 2012, Dr. Storey indicated that Plaintiff continued to received physical therapy, was partially disabled, could not return to work, and would be evaluated again on August 10, 2012. *Id*. at 300.  In a workers' compensation form dated July 19, 2012, Dr. Storey indicated that Plaintiff needed physical therapy.  *Id*. at 292, 313.

Plaintiff followed up with Dr. Storey on August 3, 2012.  *Id*. at 286-90, 307-11.  Plaintiff

reported that her cervical pain (radiating to left shoulder) was improved. *Id*. at 287. Her lumbar (radiating to the left leg), left knee, and left shoulder pain remained the same. *Id*. at 288. Examination findings of the neck, back, and shoulder were essentially the same as those in July. *Id*. at 287-88. There was swelling of the left knee. *Id*. at 288. Plaintiff continued to ambulate with a cane to support her left knee. *Id.* at 288, 309. Dr. Storey's diagnoses and prescribed treatment remained the same, including additional diagnostic studies of the spine, continuation of physical therapy, and Tramadol for pain. *Id*. at 289, 310. She referred Plaintiff to orthopedic surgeon Dr. Turtel. *Id.* She ordered a lumbar MRI. *Id.* Dr. Storey completed a workers' compensation form dated August 7, stating that Plaintiff could not work due to severely reduced range of motion of the left knee. *Id*. at 291, 312.

Plaintiff was examined by consultative examiner Chaim Shtock, M.D., on August 16, 2012. *Id*. at 301-04. Plaintiff complained of left knee pain, which was aggravated with prolonged standing, walking, and bending. *Id*. at 301. She also complained of neck pain radiating to the left trapezius muscle, which was aggravated with left upper extremity overhead reaching and turning her head. *Id.* Plaintiff reported taking Tylenol with Codeine, in addition to diabetes and hypertension medication. *Id.* Plaintiff stated that she was independent in cooking and caring for herself, but needed her son's help for cleaning, washing, laundry, and shopping. *Id*. at 302. She reported watching TV, listening to the radio, reading, and socializing with friends. *Id.* On examination, Plaintiff appeared to be in no acute distress. *Id.* She weighed 176 pounds, and her blood pressure was 110/70. *Id.* She walked with an antalgic gait and needed a cane for increased pain and decreased stability. *Id.* Plaintiff was unable to walk on her heels and toes or squat beyond 20% because of left knee pain. *Id.* She needed no help changing or getting on or off the examination table. *Id.* She rose from a chair with difficulty due to knee pain. *Id.* Plaintiff's hand

8

and finger dexterity were intact, and her grip strength was full (5 out of 5) bilaterally. *Id.* Cervical spine range of motion was reduced due to pain. *Id.* Plaintiff reported left side cervical and paravertebral tenderness, as well as muscle spasm and tenderness in the left trapezius muscle. *Id.* at 302-03. Plaintiff demonstrated full range of motion of the thoracic and lumbar spines with no spasm or tenderness. *Id.* at 303. Straight leg raising was negative. *Id.* She had full ranges of motion of the upper extremities and full (5 out of 5) strength in the proximal and distal muscles; there was no atrophy or sensory deficits. *Id.* Evaluation of the left knee showed swelling, and Plaintiff reported tenderness and pain upon compression of the medial, lateral, and anterior aspect of the left knee. *Id.* Left knee flexion was reduced due to pain and stiffness. *Id.* The right knee and bilateral hips and ankles had full ranges of motion. *Id.*

Dr. Shtock diagnosed neck pain, left trapezius muscle pain, left knee pain, status post left knee arthroscopic surgery, status post cesarean section, and reported histories of hypertension and Type 2 diabetes. *Id.* He opined that Plaintiff had severe limitations in heavy lifting, squatting, kneeling, and crouching. *Id.* at 304. She had moderate to marked limitations for frequent stair climbing; marked limitations for walking long distances and standing for long periods; and mild limitation with sitting long periods. *Id.* He stated that Plaintiff had no limitation with frequent bending or performing overhead activities using both arms and that she had no limitation using her hands for fine and gross manual activities. *Id.*

On September 10, 2012, orthopedic surgeon Barry Katzman, M.D., conducted an independent medical examination at the request of the Workers' Compensation Board. *Id.* at 325-31. Plaintiff reported that the left knee arthroscopy performed in May 2011 had helped; knee replacement was recommended, but she did not want it. *Id.* at 326. She said she had experienced no change to the condition of her neck, lower back, left shoulder, and left knee. *Id.* She had

9

numbness in the left arm, back, left knee, and left foot twice a week. *Id*. On examination, Plaintiff weighed 169 pounds. *Id*. at 327. She had reduced range of motion of her cervical spine, and no tenderness over the paraspinal muscles. *Id*. She had full (5 out of 5) strength and sensation in the upper extremities. *Id*. Plaintiff had reduced range of motion of the thoracolumbar spine, and no tenderness over the spinous processes or paraspinal muscles. *Id*. She had full (5 out of 5) strength and sensation in the lower extremities. *Id*. Straight leg raising was negative. *Id*. Plaintiff had full forward flexion of the left shoulder, and there was tenderness over the trapezius. *Id*. She had near full range of motion of the left knee, with no tenderness over the quadriceps, patellar tendons, or the medial or lateral joint lines. *Id*. There was no instability. *Id*.

Dr. Katzman diagnosed cervical strain, resolved lumbar strain, resolved left shoulder strain, and status post left knee surgery. *Id*. at 329. He stated that full medical improvement had been reached. *Id*. He opined that Plaintiff was capable of working with limited walking and lifting of not more than 20 pounds. *Id*. at 330. He assessed her disability as moderate partial. *Id*.

A cervical spine MRI performed on November 21, 2012, *Id*. at 346-47, showed a left paracentral/left foraminal herniation with severe left foraminal and thecal sac impingement at C3-C4, disc bulge with anterior thecal sac impingement at C7-T1, and disc bulge with anterior thecal sac impingement at C2-C3. *Id*. at 347. The lumbar spine MRI performed that day showed reduced disc signal intensity, disc bulge with significant bilateral foraminal impingement, and anterior thecal sac impingement at L4-L5, a disc bulge with significant bilateral foraminal impingement at L5-S1, and a reduction in disc signal intensity and a disc bulge with bilateral foraminal impingement at L3-L4. *Id*. at 351-52.

Progress reports generated for the Workers' Compensation Board on May 1 and July 8, 2013 by Robert Hecht, M.D., of Island Musculoskeletal Care, showed diagnoses of cervical and

lumbar spine strain, shoulder derangement, and internal knee derangement. *Id*. at 344-45, 354-55. He indicated that Plaintiff's complaints were consistent with her history of injury and decreased range of motion. *Id.* at 345. He opined that Plaintiff had a 100% temporary disability and could not return to work due to pain and decreased range of motion. *Id*. at 345, 355. He recommended physical therapy.

In his examination notes dated July 3, 2013, *Id*. at 356-57, Dr. Hecht reported that Plaintiff had tenderness and restricted range of motion of the cervical spine; there was no spasm, and lordosis was normal. *Id*. at 356. There was tenderness and restricted range of motion of the left shoulder. *Id*. She had full active range of motion, full (5 out of 5) motor strength, and normal strength and reflexes in the shoulders, elbows, and wrists. *Id*. There was tenderness and restricted range of motion of the lumbar spine, but no spasm. *Id*. Straight leg raising was negative bilaterally. *Id*. There was mild atrophy of the left distal quadriceps. *Id*. In the left knee, there was mild weakness with extension and restricted range of motion. *Id*. Plaintiff had full active range of motion and full (5 out of 5) motor strength in the hips, ankles, and right knee. *Id*. Dr. Hecht opined that Plaintiff remained totally disabled from her job and prescribed Tramadol. *Id*.

Dr. Turtel provided a medical source statement dated February 4, 2014. *Id*. at 348-50. He opined that Plaintiff was able to lift less than ten pounds, and stand and/or walk less than two hours in an eight-hour workday. *Id*. at 348. He said Plaintiff could sit for less than six hours. *Id*. at 349. She was limited in using the lower extremities for pushing/pulling. *Id*. She was unlimited in performing manipulative functions. *Id*. She could climb and balance occasionally, but never kneel, crouch, crawl, or stoop. *Id*. at 350. Dr. Turtel noted that Plaintiff "continues to struggle," but was slightly improved with physical therapy and would continue exercises on her own and follow-up on an "as required" basis. *Id*. at 353.

11

## DISCUSSION

### A.    Standard of Review

Unsuccessful claimants seeking disability benefits under the Act may appeal the Commissioner's decision by seeking judicial review and bringing an action in federal district court "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. § 405(g).  In reviewing the final determination of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal citations omitted).  The latter determination requires the court to ask whether the decision is supported by more than a mere scintilla of relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *see Schaal*, 134 F.3d at 501.  If the district court finds that there is substantial evidence supporting both the claimant's and Commissioner's position, it must rule for the Commissioner, as that position is based on the factfinder's determination.  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal citations omitted); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (affirming Commissioner's decision where substantial evidence supported either side).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (internal citations omitted). A remand to the Commissioner also is appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). Unlike judges in trial, ALJs have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.    Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further, the claimant's impairment must have been of such severity that she is unable to do her previous work or, considering her age, education, and work experience, she could not have engaged in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The claimant bears the initial burden of proving disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged" and which leads to the conclusion that the individual has a disability. *See* 42 U.S.C. § 423(d)(5)(A); *see also*

13

*Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (internal citations omitted).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act, as set forth in 20 C.F.R. § 404.1520. The inquiry ends at the earliest step at which the ALJ determines that the claimant is either disabled or not disabled.

First, the claimant is not disabled if she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education, and work experience. Impairments are "severe" if they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled. *Id.* Third, if the impairment is "severe," the ALJ will find the claimant disabled if her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). At the fourth step, the claimant is not disabled if she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). RFC is defined in the applicable regulations as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). To determine RFC, the ALJ makes a "function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch . . . ." *Sobolewski v. Apfel*, 985 F. Supp. 300, 309 (E.D.N.Y. 1997). The results of this assessment determine the claimant's ability to perform the exertional demands of sustained work and may be categorized as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567.

14

Finally, at the fifth step, the ALJ considers factors such as age, education, and work experience, alongside her RFC, to determine whether the claimant could adjust to other work that exists in the national economy.  If the claimant could make such an adjustment, she is not disabled. 20 C.F.R. § 404.1520(g).  At this final step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work.  *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F.2d at 642).

**C.    The ALJ's Decision**

On May 29, 2014, the ALJ issued a decision denying Plaintiff's claims, concluding that she was not disabled within the meaning of the Act.  R. at 20-37.  The ALJ followed the five-step procedure in making his determination.  *Id*. at 23-33.  First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 26, 2012, the alleged onset date.  *Id.* at 25. Second, the ALJ found the following severe impairments: status-post left knee arthroscopy in May 2011, cervical disc herniation and bulges with impingement, lumbar disc bulges, and left shoulder tendonitis.  *Id.*  Third, the ALJ concluded that Plaintiff did not have impairments, in combination or individually, that meet or medically equal the criteria of any listed impairment included in the Listings.  *Id.* at 26.

Fourth, the ALJ found that Plaintiff could perform sedentary work, as defined by 20 C.F.R. § 416.1567(a), except that she could not climb ladders, ropes, or scaffolders, squat, kneel, crouch, or crawl.  *Id.*  However, she could climb ramps and stairs and balance on an occasional basis.  *Id.* The ALJ found that, while the Plaintiff's medically determinable impairments reasonably could be expected to cause her alleged symptoms, not all the allegations were credible.  *Id.* at 29. Specifically, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible because "she still seems somewhat independent

in her activities of daily living." *Id.* The ALJ gave significant weight to consultative examiner Dr. Shtock and little weight to the opinions of treating physicians Drs. Turtel, Storey, and Katzman and any opinions generated in the context of Plaintiff's workers' compensation claim. *Id.* at 30.

After concluding that Plaintiff was unable to perform her past relevant work as a nurse assistant, *Id.* at 31, the ALJ proceeded to the fifth and final step. Relying on the testimony of the VE, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as account clerk, order clerk, or table worker. *Id.* at 32-33. The ALJ thus concluded that a finding of "not disabled" was appropriate. *Id.* at 33. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *Id.* at 1-5.

**D.    Analysis**

Plaintiff moves for judgment on the pleadings, seeking reversal of the denial of benefits and remand on the grounds that the ALJ failed to develop the record, properly apply the treating physician rule in evaluating Dr. Storey's and Dr. Turtel's opinions, properly evaluate Plaintiff's credibility, and consider Listing 1.08 for soft tissue injuries. *See* Pl. Mem. at 3-23. The Commissioner cross-moves for judgment on the pleadings, opposing the Plaintiff's motion and seeking affirmance of the denial of Plaintiff's DIB benefits on the grounds that the ALJ applied the correct legal standards to find that Plaintiff was not disabled and that the factual findings are supported by substantial evidence. *See generally,* Def. Mem.

**1.    Failure to Develop the Record**

Plaintiff argues that the ALJ failed to develop the record by neglecting to request records and a treating physician opinion from Dr. Albert Anglade. *See* Pl. Mem. at 14-17. Plaintiff

contends that Dr. Anglade was Plaintiff's primary care physician, and, therefore, his records were critical to the ALJ's determination, given broad inconsistencies among the other medical opinions available in the record. *Id.* The Commissioner counters by asserting that the lack of a treating physician's opinion does not require remand and implying that it was Plaintiff's responsibility to raise the issue with the ALJ. *See* Def. Mem., at 13-16. After a thorough and careful examination of the administrative record, the Court concludes that the ALJ failed to develop the record fully in accordance with the applicable regulations. Specifically, remand is required because the ALJ did not request Dr. Anglade's records or seek Dr. Anglade's medical opinion concerning Plaintiff's RFC.

As a result of the non-adversarial nature of Social Security benefit determinations, an ALJ has "an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (quoting *Echevarria,* 685 F.2d at 755). The ALJ's obligation to develop the administrative record exists even when the claimant is represented by counsel. *Rosa*, 168 F.3d at 79. This duty includes assembling a claimant's medical history, contacting treating physicians if the information received is insufficient to determine disability, explaining the importance of evidence, and, "[a]t a minimum, if the ALJ is inclined to deny benefits, he should advise a claimant that her case is unpersuasive and suggest that she supplement the record or call her treating physician as a witness." *Batista v. Barnhart*, 326 F. Supp.2d 345, 354 (E.D.N.Y. 2004) (internal citations omitted). Where the ALJ has failed to develop the administrative record, remand for a new hearing is appropriate. *See Rosa,* 168 F.3d at 80-81, 83.

Whether the ALJ has met his duty to develop the record is a threshold question. Before reviewing whether the Commissioner's final decision is supported by substantial evidence, under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full

hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria*, 685 F.2d at 755); *see also Rodriguez v. Barnhart*, 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)).

However, despite the ALJ's duty to develop the record, the law in this Circuit is clear: the failure of an ALJ to request formal opinions from treating physicians is not reflexively fatal where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (internal citations omitted); *see also Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (the ALJ's failure to secure a treating physician's opinion was not legal error when he possessed comprehensive medical notes); *Blair v. Astrue*, 2013 WL 782619, at *8 (E.D.N.Y. Mar. 1, 2013) ("[W]here the record contains [p]laintiff's comprehensive medical records and consulting medical experts provided opinions consistent with the ALJ's findings, the ALJ [is] not required to seek additional materials from [p]laintiff's treating physicians.") (internal citations omitted).

Nevertheless, while a lack of a statement from the plaintiff's treating source regarding how a plaintiff's impairments affect her ability to perform work related activities will not render a report incomplete, 20 C.F.R. § 404.1513(b)(6), the Commissioner still is obligated to request such a statement. *Johnson v. Astrue*, 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011) (citing *Perez*, 77 F.3d at 47); *see also Robins v. Astrue*, 2011 WL 2446371, at *3 (E.D.N.Y. June 15, 2011) ("Although the regulation provides that the lack of such a statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one.").

In the instant case, the record shows that the ALJ neither requested records from Dr. Anglade nor sought a treating physician opinion from Dr. Anglade about Plaintiff's condition and ability to work.  The New York State Office of Temporary and Disability Assistance listed Dr. Anglade as the first treating source on the state agency's disability worksheet used to track records from treating sources.  R. at 338.  Presumably, Dr. Anglade was listed at the top because Plaintiff listed Dr. Anglade as the primary physician who "may have medical records about any of [her] physical and/or mental condition(s)" on the disability report dated July 13, 2012.  *Id.* at 195-96; 206-07.  The disability worksheet indicates that two requests were made to a "Brooklyn Hospital" on July 23, 2012 and August 6, 2012, *Id.* at 338, but it is unclear from the worksheet whether Dr. Anglade actually worked at "Brooklyn Hospital" and how the state agency made that connection. Plaintiff never noted a connection between Dr. Anglade and Brooklyn Hospital in her disability report.  *Id.; see generally, Id.* at 195-96; 206-07.  Moreover, the disability worksheet contains no notes for Dr. Anglade, whereas other treating sources were given various disposition notes indicating the status of their requests for records (e.g., "did not respond to our requests," "report was received," "has no medical records available," etc.).  The disability worksheet appears incomplete, there is no evidence that ALJ reached out to Dr. Anglade to fill this material gap, and none of Dr. Anglade's notes or opinions are contained in the record.

The Commissioner contends that the record contained sufficient evidence from other physicians who treated Plaintiff for her alleged impairments, and, therefore, it was unnecessary for the Commissioner to seek medical records and an opinion from Dr. Anglade in particular.  *See generally,* Def. Mem. at 13-16.  However, the Commissioner's regulations clearly state otherwise. First, 20 C.F.R. § 404.1512(d) provides that the Commissioner will make "every reasonable effort to help you get medical reports from your own medical source when you give us permission to

request the reports." *Id.*  Second, 20 C.F.R. § 404.1513(b)(6) provides that "a treating source's medical report should include '[a] statement about what [the claimant] can still do despite [his or her] impairment(s).'" *Robins*, 2011 WL 2446371, at *3.

Dr. Anglade's records are significant in light of the conflicting medical assessments and notes from Drs. Storey, Shtock, Katzman, Hecht, and Turtel, all doctors who assessed Plaintiff's limitations once or, at most, a few times.  Dr. Anglade's records would have helped resolve these inconsistencies.  Dr. Anglade is identified throughout the record as Plaintiff's primary care physician. *See, e.g.,* R. at 195-96, 206-07, 230, 237, 240, 302.  Plaintiff indicated that Dr. Anglade has been her primary physician since the 1990s, and she continued to see him throughout 2012, before and after her disability onset date, noting appointments in June, August, and September of 2012. *Id.* at 195-96, 206-07.  Dr. Anglade prescribed medication for Plaintiff's hypertension, diabetes, high cholesterol, and pain, including Tramadol for her knee pain. *Id.* at 58, 195, 206-07. He treated Plaintiff for "all of [her] conditions." *Id.*

 Given Dr. Anglade's long standing relationship with the Plaintiff, longer than any other doctor in the record, there is no dispute that the ALJ should have rendered his decision with the benefit of Dr. Anglade's notes and opinion.  The ALJ was bound to make "make every reasonable effort" to help Plaintiff obtain Dr. Anglade's records, and yet the record is bereft of any indication that the ALJ independently, whether by a post-hearing subpoena or otherwise, sought medical records from Dr. Anglade. *See generally, Id.*  It was insufficient for the ALJ to ask Plaintiff's counsel at her hearing whether the record was complete and to rely on counsel's affirmative response. *Id.* at 44.  The ALJ still maintains the duty to develop the record fully, and this burden does not shift to the Plaintiff.  The ALJ should have been cognizant that documents concerning Dr. Anglade's treatment of Plaintiff remained outstanding.

Even if the ALJ was in possession of Plaintiff's complete medical history and notes, which he was not, for the reasons stated above, courts have found that "[a]djudicators are generally required to request that acceptable medical sources provide . . . [RFC] statements with their medical reports." *Steinhart*, 2013 WL 5519959, at *5 (quoting *Johnson v. Astrue*, 811 F.Supp.2d 618, 630 (E.D.N.Y. 2011)).  Treating physician opinions are to be sought and given deference because "[t]o obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician." *Peed v. Sullivan*, 778 F. Supp. 1241 (E.D.N.Y. 1991).

Thus, the ALJ's failure to seek Dr. Anglade's medical opinion, on its own, also is error. *See Robins*, 2011 WL 2446371, at *3 (noting that the regulations provide that although a lack of a RFC assessment will not render a report incomplete, the Commissioner is required nonetheless to make a request in the first place); *Johnson*, 811 F. Supp.2d at 630 (concluding that the ALJ's failure to request the treating physician's RFC opinion, despite possessing the claimant's complete medical history, warranted remand); *Mallard v. Astrue*, 2012 WL 580529, at *4 (E.D.N.Y. Feb. 22, 2012) (remanding for failure to develop the record where the ALJ did not obtain RFC opinions from the treating physician or urge the plaintiff to obtain them herself).

The Court concludes that the ALJ failed to obtain Plaintiff's complete medical history and treating physician assessments, and remands this matter to provide the ALJ the opportunity to do so.  *See Steinhart v. Astrue*, 2013 WL 5519959, at *4-5 (E.D.N.Y. Sept. 30, 2013) (remanding where the ALJ failed to assist Plaintiff in obtaining, or ever advised Plaintiff in obtaining, medical

records from a treating physician).  The ALJ shall reevaluate Plaintiff's disability claim in light of this additional evidence.

### 2.  Motion to Strike Supplemental Administrative Record

On March 18, 2016, the Commissioner filed a supplemental record containing a "disability development and documentation" request dated July 23, 2012, from the New York State Office of Temporary and Disability Assistance to Dr. Anglade at "Brooklyn Hosp Community Care."  *See* Supplemental Administrative Record ("Suppl. R."), Dkt. Entry No. 12, at 358-361.  The request sought Plaintiff's treatment records from Dr. Anglade for the period of January 1, 2010 to July 23, 2012 in connection with her application for disability benefits.  *Id.*  The bottom of the document redacted voucher instructions for a treating source to receive payment.  *Id.* at 358.  On March 28, 2016, Plaintiff moved to strike the supplemental record on three grounds: (1) the supplemental record had been altered or was incomplete; (2) it was not part of the electronic administrative record made available to Plaintiff's counsel by the Appeals Council; and (3) it did not prove that the Commissioner fulfilled his duty to develop Plaintiff's medical records.  *See generally,* Pl.'s Mot. to Strike, Dkt. Entry  No. 13.

The Court grants Plaintiff's motion to strike on three grounds.  First, the Commissioner fails to explain properly why a portion of the supplemental transcript was redacted, when identical documents found throughout the certified administrative record contained no such redaction.  *See, e.g.*, R. at 321.  While payment instructions ultimately may have no bearing on the determination of Plaintiff's disabilities, the Commissioner's explanation, or lack thereof, as to why the document was redacted or altered is inadequate.

Second, there is no indication that this document was part of the certified administrative record that was before either the ALJ or Appeals Council.  *See generally,* R. at 34-37.  The

Commissioner's broad assertion that "the ALJ had to rely on the information contained in the supplemental transcript in order to make his decision" is unfounded, as the ALJ's decision is completely devoid of any mention of Dr. Anglade even though he should have been aware of the doctor's relationship with Plaintiff as her primary physician. *See* Mem. of Law in Opp. to Pl.'s Mot. to Strike the Suppl. R., Dkt. Entry No. 15, at 2-3. The state agency's disability worksheet contained no notes for Dr. Anglade, and, consequently, the status of these two requests to Dr. Anglade would have been unknown to the ALJ and the Appeals Council. R. at 338.

Moreover, the Commissioner's reference to *Cross v. Astrue*, is misplaced. 2010 WL 2399379 (N.D.N.Y. May 24, 2010), report and recommendation adopted, 2010 WL 2399346 (N.D.N.Y. June 10, 2010). In *Cross*, the Court held the Commissioner's inclusion of a supplemental certified administrative record was proper because the document was "inadvertently omitted from the original" certified record. 2010 WL 2399379, at *2. In other words, the omitted document indeed had been part of the original certified record. The court found that, not only did the Commissioner's procedure manual for appeals contemplate this potential issue, but the Commissioner in *Cross* also provided a certification and declaration explaining that the supplemental letter inadvertently had been omitted from the original administrative record. *Id.* Here, there is no evidence that the supplemental transcript was part of the original certified administrative record, and there is no equivalent certification or declaration to explain that this document was part of the original record.

A reviewing court is limited to reviewing the administrative record that was before the agency and formed the basis for the agency's decision. *Cross*, 2010 WL 2399379, at *3 (citing *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) ("It is well settled that judicial review of agency action is normally confined to the full administrative record before

the agency at the time the decision was made . . . . [and] not some new record completed initially in the reviewing court.")); *see also State of New York v. Shalala*, 1996 WL 87240, at *5 (S.D.N.Y. Feb. 29, 1996) ("Judicial review of agency action is generally limited to review of the full administrative record that was before the agency at the time it rendered its decision.") (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). Generally, if an administrative record does not support the agency action, or if a reviewing court cannot evaluate the challenged agency action on the basis of the record before it, the court is to remand to the agency for additional investigation, rather than admit new evidence. *Shalala*, 1996 WL 87240, at *5. Therefore, a court may strike materials submitted to the court "on an appeal from agency action that were not part of the administrative record on which the challenged agency action was based." *Id.*

Third, the Court is not persuaded that the supplemental record is evidence that the ALJ properly requested medical records from Dr. Anglade and fulfilled his duty to develop the record. The supplemental record only shows that a request was made from the state agency to Dr. Anglade on July 23, 2012, when Plaintiff's initial application for disability benefits was under consideration. The record contains no other evidence that the ALJ himself made a follow up request to address the omission of Dr. Anglade's records from the administrative record. Moreover, the supplemental transcript is incomplete and is missing documentation of the alleged second request made to Dr. Anglade from the state agency, dated August 6, 2012. *Cf.* R. at 338-43; R. at 358-61.

Accordingly, the Court grants Plaintiff's motion to strike the supplemental record.

### 3. **Plaintiff's Remaining Arguments**

Plaintiff's remaining contentions are that the ALJ failed to review Listing 1.08 for soft

tissue injuries, improperly applied the treating physician rule in giving little weight to the opinions of Drs. Storey and Turtel, and improperly determined her RFC and credibility without substantial evidence. *See* Pl Mem. at 17-23. Because the Court has determined that remand is appropriate to fully develop the record upon which the Listings, treating physician opinions, and RFC and credibility assessments are based, it need not and does not consider the remaining arguments. *See Rosa,* 168 F.3d at 82 n.7 ("Because we have concluded that the ALJ was incorrect in her assessment of the medical evidence, we cannot accept her conclusion regarding . . . credibility."); *Wilson v. Colvin*, 107 F. Supp.3d 387, 407 n.34 (S.D.N.Y. 2015) (since the ALJ failed to develop the record, the Commissioner must "necessarily" reassess a claimant's RFC and credibility on remand); *Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp.2d 297, 331 (S.D.N.Y. 2010) ("Because I find legal error requiring remand, I need not consider whether the ALJ's decision was otherwise supported by substantial evidence.") (internal citations omitted). On remand, the ALJ shall elaborate on these remaining arguments raised by Plaintiff.

**[INTENTIONALLY LEFT BLANK]**

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff's motion to strike the Supplemental Record filed by the Commissioner and motion for judgment on the pleadings are granted, and the Commissioner's cross-motion for judgment on the pleadings is denied.  Accordingly, the decision of the Commissioner is reversed, and this matter is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

If Plaintiff's benefits remain denied, the Commissioner is directed to render a final decision within sixty (60) days of Plaintiff's appeal, if any.  *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (suggesting procedural time limits to ensure speedy disposition of Social Security cases upon remand by district courts).


SO ORDERED.

Dated: Brooklyn, New York
        March 31, 2017


_____
                    /s/
            DORA L. IRIZARRY
            Chief Judge